1

2

3

4

5

6

FILED & ENTERED

MAR 30 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

7

8

9

10

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re:

MEHRDAD TAHERIPOUR,

              Debtor.

_____

DAVID A. GILL, Chapter 7 Trustee,

              Plaintiff,

   vs.

NEXGEN ENERGY HOLDINGS PCC
LIMITED, an Isle of Man company;
WILTON GROUP; ANTHONY BARBER;
TONY FLANAGAN; NICOLE HEWSON;
EBRAHIM KAHEN-KASHANI; ERIC
HERRERA; DONALD S. BURRIS;
BURRIS, SCHOENBERG & WALDEN,
LLP; BENEFICIARIES OF PRIVATE
TRUST J999; LINDA SHETABI;
FARIBORZ BEROUKHIM; AND HALEH
BEROUKHIM,

             Defendants.

///

Case No. 2:12-bk-30028-RK

Chapter 7

Adversary No. 2:13-ap-01443-RK

**MEMORANDUM DECISION ON
MOTIONS TO DISMISS TRUSTEE'S
THIRD AMENDED COMPLAINT**

1    Pending before the court are the separate motions of Defendants Ebrahim Kahen-

2   Kashani ("Mr. Kahen-Kashani"), ECF 124, Eric Herrera ("Mr. Herrera"), ECF 120, Donald

3   S. Burris and Burris, Schoenberg and Walden, LLP (the "Burris Parties"), ECF 122, and

4   Fariborz Beroukhim and Haleh Beroukhim (the "Beroukhims"), ECF 154 (collectively, the

5   "Moving Defendants") to dismiss the Third Amended Complaint of Plaintiff David A. Gill,

6   the Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Debtor Mehrdad Taheripour

7   ("Debtor").

8    Trustee's Third Amended Complaint alleges that Debtor, as part of a scheme,

9   fraudulently transferred certain real property he owned at 2905 Corda Lane, Los Angeles,

10   California (the "Property"), to defraud his creditors.  Trustee bifurcates the scheme based

11   upon two fraudulent transfers of the Property, one that occurred pre-petition (the "Pre-

12   Petition Fraudulent Transfer Scheme"), and one that occurred post-petition (the "Post-

13   Petition Fraudulent Transfer Scheme").  Under the Pre-Petition Fraudulent Transfer

14   Scheme, Trustee alleges that Debtor, Defendant Nexgen Energy Holdings PCC Limited,

15   an Isle of Man company ("Nexgen"), an insider of Debtor, Mr. Herrera, a real estate

16   broker, and Mr. Kahen-Kashani, the president of Nexgen, among others, conspired to,

17   then transferred the Property from Debtor to Nexgen to defraud Debtor's creditors.  *Third*

18   *Amended Complaint*, ¶¶ 4-6, 19, 29, 30, 35, 37-38, 48-49, 59, 60 and 68.  Subsequently,

19   under the Post-Petition Fraudulent Transfer Scheme, Trustee alleges that the same

20   parties, in a second transaction, conspired to, then transferred both the Property and the

21   sale proceeds thereof from Nexgen to the Beroukhims to defraud Nexgen's creditors and

22   put the Property further out of the reach of Debtor's creditors.  *Id.*, at ¶¶ 4, 6, 32, 95-97,

23   104 and 105.  Trustee further alleges that the Burris Parties, as counsel to Nexgen, upon

24   learning of the Post-Petition Fraudulent Transfer Scheme after the Property was

25   transferred from Nexgen to the Beroukhims, agreed to join the Post-Petition Fraudulent

26   Transfer Scheme and then assisted in the fraudulent transfer of the Property's resale

27

28

1  proceeds offshore, some of which the Burris Parties fraudulently retained for their own

2  benefit.  *Id.*, ¶ 109.

3          On April 11, 2013, Trustee commenced this adversary proceeding by filing a

4  complaint against Nexgen that asserted causes of action for constructive and intentional

5  fraudulent transfers under 11 U.S.C. §§ 544(b), 548 and 550, and California Civil Code §

6  3439 to avoid and recover certain fraudulent transfers, and for preliminary and permanent

7  injunctions under 11 U.S.C. § 105.  ECF 1.  On January 24, 2014, with leave of court,

8  Trustee filed his First Amended Complaint against Nexgen, Mr. Kahen-Kashani, Mr.

9  Herrera, the Burris Parties, among others, and asserted causes of action for constructive

10 and intentional fraudulent transfers under 11 U.S.C. §§ 544(b), 548 and 550, and

11 California Civil Code § 3439 to avoid and recover certain fraudulent transfers, and for

12 preliminary and permanent injunctions under 11 U.S.C. § 105.  ECF 48.  Mr. Kahen-

13 Kashani filed his Motion to Dismiss Adversary Proceeding and Trustee's First Amended

14 Complaint, ECF 67, which was granted by the court with leave to amend, ECF 102.  On

15 April 24, 2014, Trustee filed his Second Amended Complaint against the same

16 defendants and asserted causes of action for constructive and intentional fraudulent

17 transfers under 11 U.S.C. §§ 544(b), 548 and 550, and California Civil Code § 3439 to

18 avoid and recover certain fraudulent transfers, and for preliminary and permanent

19 injunctions under 11 U.S.C. § 105.  ECF 76.  Mr. Kahen-Kashani, the Burris Parties and

20 Mr. Herrera filed motions to dismiss the Second Amended Complaint.  ECF 84, 94 and

21 96, respectively.  The court entered an order granting the Burris Parties' motion to

22 dismiss the Second Amended Complaint with further leave to amend.  ECF 117.

23 Subsequently, on August 1, 2014, Trustee filed the Third Amended Complaint against the

24 same defendants and the Beroukihms, and asserted causes of action for constructive

25 and intentional fraudulent transfers under 11 U.S.C. §§ 544(b), 548 and 550, and

26

27

28

1  "California State Law" to avoid and recover certain fraudulent transfers, and for

2  preliminary and permanent injunctions under 11 U.S.C. § 105.  ECF 119.[1]

3       On August 15, 2014, Mr. Herrera filed his Motion to Dismiss pursuant to Federal

4  Rule of Civil Procedure ("Civil Rule") 12(b)(1)[2] and (6), made applicable to this adversary

5  proceeding by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012.  ECF

6  120.  On August 18, 2014, the Burris Parties filed their Motion to Dismiss pursuant to Civil

7  Rule 12(b)(6) and 19(b), made applicable to this adversary proceeding by Bankruptcy

8  Rule 7019.  ECF 122.  On August 22, 2014, Mr. Kahen-Kashani filed his Motion to

9  Dismiss pursuant to Civil Rule 12(b)(6).  ECF 124.  On October 10, 2014, the Beroukhims

10  filed their Motion to Dismiss pursuant to Civil Rule 12(b)(6).  ECF 144 and 154.

11       On September 9, 2014, Trustee filed oppositions to the motions to dismiss of the

12  Burris Parties, Mr. Herrera and Mr. Kahen-Kashani.  ECF 133, 134 and 135.  The Burris

13  Parties and Mr. Herrera filed replies thereto.  ECF 137 and 138.  At the September 30,

14  2014 hearings on the motions to dismiss of the Burris Parties, Mr. Herrera and Mr.

15  Kahen-Kashani, the court continued the hearings on their motions to dismiss to

16  November 18, 2014 and set deadlines for optional supplemental briefing regarding

17  whether Trustee has standing to assert his claims on behalf of the bankruptcy estate

18  against the Burris Parties, Mr. Herrera and Mr. Kahen-Kashani, who are third parties.

19  The Burris Parties, Mr. Kahen-Kashani, Mr. Herrera and Trustee filed supplemental briefs

20  on October 6 and 7, 2014.  ECF 145, 146, 147, and 148.  The Burris Parties filed a

21  second supplemental brief on October 14, 2014.  ECF 156.  Trustee filed an omnibus

22  reply to the supplemental briefs on October 14, 2014.  ECF 158.  On November 4, 2014,

---

[1] On September 3, 2014, Trustee filed a "Corrected Third Amended Complaint," stating that the August 1, 2014 filing inadvertently omitted Defendants Fariborz Beroukhim and Haleh Beroukhim from the caption page.  All other content is identical.  ECF 129.

[2] In his Motion to Dismiss, Herrera moved the court to only dismiss the seventh and ninth claims for relief pursuant to Civil Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that Trustee does not have standing to bring such claims against third parties.  Notice of Motion And Motion By Defendant Eric Herrera To Dismiss The Third Amended Trustee's Complaint at 10.  Since the court dismisses the fourth through eleventh claims for relief against Moving Defendants for lack of standing pursuant to Civil Rule 12(b)(6), granting the same relief under a different rule, it need not address this issue.

1  Trustee filed an opposition to the Beroukhims' Motion to Dismiss, ECF 160, and on

2  November 7, 2014, the Beroukhims filed a reply thereto.  ECF 162.

3         Having previously taken these matters under submission, ECF 171, and having

4  considered the moving, opposing and reply papers, the oral and written arguments of the

5  parties, and the record before the court, the court determines that Trustee does not have

6  standing to assert the Third Amended Complaint's second, fourth, fifth, seventh, eighth,

7  ninth, tenth and eleventh claims for relief against the Moving Defendants and, therefore,

8  dismisses those claims pursuant to Civil Rule 12(b)(6) for lack of standing with prejudice.

9  The court also dismisses with prejudice Trustee's third claim for relief against the Burris

10  Parties for failure to state a claim upon which relief can be granted under Civil Rule

11  12(b)(6), and dismisses with prejudice the twelfth claim for relief against the Burris

12  Parties and the Beroukhims only for failure to state a claim upon which relief can be

13  granted pursuant to Civil Rule 12(b)(6).  Nonetheless, with respect to Trustee's third

14  claim for relief against Mr. Herrera and Mr. Kahen-Kashani, the court denies Mr.

15  Herrera's and Mr. Kahen-Kashani's motions under Civil Rule 12(b)(6) to dismiss that

16  claim for relief as against them.

17                    **SUMMARY OF THE THIRD AMENDED COMPLAINT**

18         As previously discussed, Trustee's claims against Moving Defendants arise from

19  two alleged fraudulent transfer schemes, the Pre-Petition Fraudulent Transfer Scheme

20  and the Post-Petition Fraudulent Transfer Scheme.  *See Third Amended Complaint*, ¶ 4.

21  In ruling upon Moving Defendants' motions to dismiss Trustee's Third Amended

22  Complaint, the court only addresses the claims asserted against the Moving Defendants.

23         Trustee's Third Amended Complaint alleges that under the Pre-Petition Fraudulent

24  Transfer Scheme, on May 31, 2012, seven days before Debtor filed his voluntary petition

25  for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C., on June 7, 2012, Debtor

26  and Debtor's wife, Linda Shetabi ("Mrs. Shetabi"), sold the Property, which was their

27  residence, to Nexgen, an insider of Debtor, for $1,000,000.00, substantially below the

28

Property's fair market value of approximately $2,000,000.00 ("Pre-Petition Transfer"). *Id.,* ¶¶ 4, 6, 19, 35, 37-38 and 57. Trustee in his Third Amended Complaint also alleges that the Pre-Petition Transfer was the result of a conspiracy entered into by and between Debtor, Mrs. Shetabi, Nexgen, Mr. Herrera, Matteo Bushehri ("Mr. Bushehri"), the beneficial owner of Nexgen and Debtor's cousin, and Mr. Kahen-Kashani, the president of Nexgen, among others, but not including the Burris Parties and the Beroukhims, to defraud Debtor's creditors. *Id.,* ¶¶ 8, 11, 29, 38, 48, 59 and 68. Trustee in the Third Amended Complaint alleges that Debtor and Bushehri "formulated and agreed" to the Pre-Petition Transfer Scheme in about April 2011 through June 2011. *Id.,* ¶ 56.

Trustee in the Third Amended Complaint also alleges that Mr. Herrera agreed to join the Pre-Petition Fraudulent Transfer Scheme in June 2011, which is to be "inferred" from a number of facts alleged in paragraphs 60a through 60v of the Third Amended Complaint. *Id.,* ¶ 60. Nonetheless, the Third Amended Complaint does not allege how much Mr. Herrera was paid for his alleged involvement in the Pre-Petition Fraudulent Transfer Scheme, if anything, nor does it allege whether any payment that Herrera received in connection with the Pre-Petition Fraudulent Transfer Scheme constituted a commission or something more. *Id.* The Third Amended Complaint also does not allege any specific facts to show that Mr. Herrera knew of the Pre-Petition Transfer's fraudulent nature, nor does it allege a relationship between Mr. Herrera and other parties from which one can infer that Mr. Herrera knew of the Pre-Petition Transfer's fraudulent nature and thus agreed to be involved in the Pre-Petition Fraudulent Transfer Scheme.

Further, Trustee in the Third Amended Complaint also alleges that Mr. Kahen-Kashani agreed with Nexgen and Mr. Bushehri to join the Pre-Petition Fraudulent Transfer Scheme in February 2012, which is to be "inferred" from a number of facts alleged in paragraphs 68a through 68t and 69 of the Third Amended Complaint. *Id.,* ¶¶ 68-69. Trustee alleges that Mr. Kahen-Kashani received cash proceeds from the rental of the Subject Property and $40,000.00 from the sale proceeds of the Pre-Petition

Transfer "to simply sign paperwork associated with the Pre-Petition Transfer," *id.*, ¶¶ 59, 69, but also acknowledges that Mr. Kashen-Kashani "claims that, after the transfer of the [ ] Property, [ ] Nexgen breached the agreement to pay him, but continues to owe such payments to him," *id.*, ¶ 82.

Trustee's second claim for relief in the Third Amended Complaint is asserted against Mr. Herrera and Mr. Kahen-Kashani, among others, as alleged conspirators of the Pre-Petition Fraudulent Transfer Scheme pursuant to 11 U.S.C. §§ 544(a) and a conspiracy theory of liability under California state law, and seeks to recover the value of the Property, jointly and severally, from Mr. Herrera and Mr. Kahen-Kashani.  *Id.*, ¶¶ 50-54.

Trustee's third claim for relief in the Third Amended Complaint is also asserted against Mr. Herrera and Mr. Kahen-Kashani, among others, arising from their alleged involvement in the Pre-Petition Fraudulent Transfer Scheme.  Pursuant to 11 U.S.C. §§ 544(b) and 550(a), and California Civil Code § 3439.04(a)(1), as the "beneficiaries" of the Pre-Petition Transfer, Trustee's third claim for relief seeks to hold Mr. Herrera and Mr. Kashen-Kashani jointly and severally liable for the value of the Property or, in the alternative, in an amount equal to the benefit they each received or were supposed to receive from the Pre-Petition Transfer.  *Id.*, ¶¶ 71-76, 78, 82 and 86-87.

Although the caption of the third claim for relief names the Burris Parties as defendants, the allegations made by Trustee under that claim do not assert any liability of the Burris Parties for that claim.  *Id.*, ¶¶ 71-92.  In footnote one of the Trustee's opposition to the Burris Parties' Motion to Dismiss, Trustee acknowledges that the caption of the third claim for relief erroneously names the Burris Parties.  *Plaintiff's Response In Opposition to Defendants Donald Burris and Burris Schoenberg & Walden LLP's Motion to Dismiss Plaintiff's Third Amended Complaint*, ECF 133, at 1-2.  Accordingly, the court grants the Burris Parties' Motion to Dismiss as to the third claim for relief as against them.

1    Moreover, Trustee in the Third Amended Complaint alleges that Nexgen

2  "embarked" on a scheme to resell the Property post-petition with the intent to defraud its

3  creditors, including Trustee, and transfer the sales proceeds thereof offshore beginning in

4  about 2012.  *Id.*, ¶¶ 95 and 98.  On March 14, 2013, Nexgen allegedly resold the

5  Property to the Beroukhims for $2,000,000.00, intentionally rendering Nexgen judgment

6  proof as to its creditors ("Post-Petition Transfer").  *Id.*, ¶¶ 4, 32 and 96.  Trustee states

7  that the  Post-Petition Transfer's fraudulent nature is to be "inferred" from the facts

8  alleged in paragraphs 97a through 97i of the Third Amended Complaint.  *Id.*, ¶ 97.

9  Further, Nexgen allegedly received $1,192,000.00 in sales proceeds from the Post-

10  Petition Transfer on or about March 14, 2013.  *Id.*, ¶ 116.

11    The fourth through eleventh claims for relief in the Third Amended Complaint

12  relate to the alleged Post-Petition Transfer.  The fourth claim for relief is asserted against

13  Nexgen and the Beroukhims only, and seeks avoidance of the Post-Petition Transfer

14  from Nexgen to the Beroukhims and recovery of the Property, or, in the alternative, the

15  value of the Property "under California state law," presumably California Civil Code §§

16  3439.04(a)(1) and 3439.08(b).  *See Id.*, ¶¶ 98-101.  The fourth claim for relief in the Third

17  Amended Complaint also seeks punitive and exemplary damages against Nexgen.  *Id.*, ¶

18  102.  Nonetheless, the Third Amended Complaint does not allege any specific facts that

19  the Beroukhims knew of the alleged fraudulent nature of either the Pre- or Post-Petition

20  Transfers, nor does it allege a relationship in which one can infer that the Beroukhims

21  knew of and agreed to be involved in the Pre- or Post-Petition Transfers.  *Id.*

22    The Third Amended Complaint's fifth claim for relief alleges that the Post-Petition

23  Transfer Scheme was originally "formulated and agreed" to among Debtor, Mrs. Shetabi,

24  Nexgen, Mr. Busherhri, Mr. Kahen-Kashani and Mr. Herrera, among others, in about late

25  2012, *id.*, ¶ 104, which is to be "inferred" from the facts alleged in paragraphs 105a

26  through 105aa of the Third Amended Complaint.  *Id.*, ¶ 105.

27

28

1       The fifth claim for relief in the Third Amended Complaint also alleges that Mr.

2  Herrera, again acting as the real estate broker, received $100,000.00 from the Post-

3  Petition Transfer's sales proceeds for his participation in the Post-Petition Transfer

4  Scheme. *Id.*, ¶¶ 105z and 108.  Nonetheless, Trustee does not allege any specific facts

5  that show Mr. Herrera received the $100,000.00 as anything other than a commission,

6  that Mr. Herrera knew of the fraudulent nature of either the Pre- or Post-Petition

7  Transfers, that Mr. Herrera agreed to be involved in the fraudulent transfers, nor does it

8  allege a relationship between Debtor and Mr. Herrera beyond that of real estate broker

9  and client from which one can infer fraudulent conduct.

10       Further, the fifth claim for relief in the Third Amended Complaint alleges that Mr.

11  Kahen-Kashani was "entitled to receive $40,000 cash proceeds" from his participation in

12  the Post-Petition Fraudulent Transfer Scheme.  *Id.*, ¶¶ 105y and 107.  Nonetheless, this

13  claim for relief does not make it clear whether the $40,000.00 that Mr. Kahen-Kashani

14  was entitled to receive for his alleged participation in the Post-Petition Fraudulent

15  Transfer Scheme was the same $40,000.00 that he was to receive or did receive for his

16  participation in the Pre-Petition Fraudulent Transfer Scheme, or in addition to that

17  amount.

18       Moreover, the fifth claim for relief in the Third Amended Complaint also alleges

19  that the Burris Parties, former counsel to Nexgen, *see id.*, ¶¶ 27, 28, 109a - 109r and the

20  Docket,[3] "learned of and agreed to" join the Post-Petition Fraudulent Transfer Scheme

21  "on or about April 1, 2013, if not earlier," which is to be "inferred" from the facts alleged in

22  paragraphs 109a through 109r. *Id.*, ¶ 109.  The fifth claim for relief also alleges that on

23  April 5, 2013, the Burris Parties received $375,000.00 of the Post-Petition Transfer's

24

25  [3] The court takes judicial notice of the fact that the Burris Parties were counsel to Nexgen, since this fact is

26  not subject to reasonable dispute between the parties. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-690

    (9th Cir. 2001) (A court may "take judicial notice of matters of public record without converting a motion to

27  dismiss into a motion for summary judgment . . . but [only when taking] judicial notice of a fact that is [not]

    subject to reasonable dispute.); *see also*, Federal Rule of Evidence 201.

28

1    sales proceeds from Mr. Kahen-Kashani on behalf of Nexgen,[4] *id.*, ¶ 109j, and, on April 8,

2    2013, the Burris Parties transferred $300,000.00 of the $375,000.00 to Defendant Wilton

3    Group offshore in the Isle of Man, retaining $75,000.00 for their own benefit,[5] *id.*, ¶ 109k.

4    Trustee also alleges that on April 3, 2013, the Burris Parties "heard the admonishment

5    that it may be wrongful to transfer proceeds of the re-sale." *Id.*, ¶ 109h.  This factual

6    allegation is vague and does not describe with sufficient particularity how the Burris

7    Parties knew the transfer of the resale proceeds in their possession at the time would be

8    wrongful.  Further, the fifth claim for relief also alleges that the Burris Parties agreed to

9    and did stipulate to a restraining order to protect the resale proceeds, *id.*, ¶ 109q, which

10    stipulation was executed by Trustee, Nexgen and the Burris Parties on April 10 and 11,

11    2013,[6] ECF 2, after the alleged transfer of the $300,000.00 to Defendant Wilton Group.

12    On April 15, 2013, the court entered the Temporary Restraining Order based on the

13    Stipulation, which expressly provided that Nexgen was restrained from transferring any of

14    the sale proceeds in its possession and the Burris Parties were to keep the sale proceeds

15    in Nexgen's client trust account.[7]  ECF 6.  Trustee does not allege specific facts to show

16    that the Burris Parties failed to deposit the $75,000.00 into Nexgen's client trust account,

17    that the Burris Parties knew of the fraudulent nature of the Pre- and Post-Petition

18    Transfers, that the Burris Parties agreed to participate in the Post-Petition Fraudulent

19    Transfer Scheme, that the Burris Parties acted outside of their professional capacity as

---

[4] The court notes that the Third Amended Complaint inconsistently alleges at paragraph 138 that the alleged transfer of the $375,000.00 from Kahen-Kashani on behalf of Nexgen to the Burris Parties occurred on March 20, 2013. Third Amended Complaint, ¶ 138.

[5] The court notes that the Third Amended Complaint inconsistently alleges at paragraph 142 that the alleged transfer of the $300,000.00 from the Burris Parties to Defendant Wilton Group occurred on April 9, 2013.  Third Amended Complaint, ¶ 142.

[6] The court takes judicial notice of the dates of the execution of the Stipulation for Issuance of Temporary Restraining Order ("Stipulation"), which was filed with the court on April 11, 2013, ECF 2, since the existence of the Stipulation is not subject to reasonable dispute between the parties.  *Lee v. City of Los Angeles*, 250 F.3d at 688-690; *see also*, Federal Rule of Evidence 201.

[7] The court takes judicial notice of the Stipulation and Temporary Restraining Order, since their existence is not subject to reasonable dispute between the parties. *Lee v. City of Los Angeles*, 250 F.3d at 688-690; *see also*, Federal Rule of Evidence 201.

counsel for Nexgen, nor that a relationship between the Burris Parties and Debtor exists from which one could infer fraudulent conduct.

Under the fifth, seventh and ninth claims for relief in the Third Amended Complaint, Trustee seeks to recover the value of the Property or certain sales proceeds from the Post-Petition Transfer based on a conspiracy theory of liability against Mr. Herrera, Mr. Kahen-Kashani and the Burris Parties, among others, under California law. *See also*, *Plaintiff's Supplemental Memorandum In Opposition to Motions to Dismiss Third Amended Complaint*, ECF 148, at 1; *Plaintiff's Omnibus Reply to Movants' Supplemental Briefs*, ECF 158, at 11-12.  Specifically, the fifth claim for relief seeks to hold Mr. Herrera, Mr. Kahen-Kashani and the Burris Parties jointly and severally liable for damages in an amount equal to the Property's value.  *Third Amended Complaint*, ¶¶ 110-112.  Further, the seventh claim for relief seeks to hold Mr. Herrera, Mr. Kahen-Kashani, and the Burris Parties jointly and severally liable for damages in the amount of $750,000.00 for Nexgen's alleged wire transfer of certain sale proceeds to Nexgen Energy Technologies Ltd. in Hong Kong as part of the Post-Petition Fraudulent Transfer Scheme.  *Id.*, ¶¶ 117-121; 127-133.  Moreover, the ninth claim for relief seeks to hold Mr. Herrera, Mr. Kashen-Kashani, and the Burris Parties jointly and severally liable for damages in the amount of the $375,000.00 sales proceeds.  *Id.*, ¶¶ 151-157.  In addition, Trustee also seeks punitive and exemplary damages against these parties under the fifth, seventh and ninth claims for relief.  *Id.*, ¶¶ 113, 134 and 158.

Regarding the eighth claim for relief, although that claim relies on the same facts as alleged under the ninth claim for relief, Trustee seeks to treat the transfer of the $375,000.00 sale proceeds from Nexgen to the Burris Parties as a separate fraudulent transfer, and seeks to avoid that transfer and recover the sale proceeds thereof pursuant to California Civil Code §§ 3439.04(a)(1) and 3439.08(b) against the Burris Parties as "initial transferees."  *Id.*, ¶¶ 135-149; *see also*, *Plaintiff's Response In Opposition to Defendants Donald Burris and Burris Schoenberg & Walden LLP's Motion to Dismiss*

*Plaintiff's Third Amended Complaint*, ECF 133, at 18-20.  The eighth claim for relief also seeks punitive and exemplary damages against the Burris Parties.  *Third Amended Complaint*, ¶ 150.

Under the tenth claim for relief in the Third Amended Complaint, upon avoidance of the Pre-Petition Transfer, Trustee seeks declaratory relief, order or judgment under "California State Law" against Nexgen, the Burris Parties and Defendant Wilton Group for $75,000.00 of the $375,000.00 from the Post-Petition Transfer's sale proceeds.  *Id.*, ¶¶ 159-164.

Under the eleventh claim for relief in the Third Amended Complaint, upon avoidance of the Pre-Petition Transfer, Trustee requests declaratory relief, order or judgment under "California State Law" against Nexgen, the Burris Parties and Defendant Wilton Group for "approximately $72,000" of the sale proceeds.  Trustee alleges that Nexgen wire transferred $72,000 in post-petition sale proceeds to the Burris Parties.  *See Id.*, ¶¶ 165-169.  It is unclear from the Third Amended Complaint, however, where the $72,000.00 amount comes from.

Finally, the twelfth claim for relief in the Third Amended Complaint, pursuant to 11 U.S.C. § 105, seeks preliminary and permanent injunctions enjoining all of the defendants from further transferring the Property and the sales proceeds thereof.  Id., ¶¶ 170-173.

## **ANALYSIS**

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (H).  Venue is proper in this court pursuant to 28 U.S.C. § 1409(a).

*///*

*///*

## I.  DEFENDANT NEXGEN'S ALLEGED BANKRUPTCY FILING

**Nexgen's Alleged Bankruptcy Filing In the Isle of Man Does Not Prohibit this Court From Proceeding with this Adversary Proceeding and, In Particular, Ruling On Moving Defendants' Motions to Dismiss Pursuant to 11 U.S.C. §§ 1515 and 1517.**

Mr. Kahen-Kashani and the Burris Parties assert that because Nexgen has commenced a bankruptcy proceeding in the Isle of Man, a foreign jurisdiction, Trustee cannot proceed with this adversary proceeding against Nexgen without first obtaining permission from the Isle of Man bankruptcy court to proceed against Nexgen in this adversary proceeding.  *See Motion by the Burris Parties to Dismiss Them from the Third Amended Complaint, Without Leave to Amend*, ECF 122, at 2, 6; *Notice of Motion and Motion to Dismiss Adversary Proceeding and Trustee's Third Amended Complaint*, ECF 124, at 6.  Nonetheless, it appears that Mr. Kahen-Kashani and the Burris Parties intend to argue that because the court cannot proceed against Nexgen in this adversary proceeding due to the pendency of Nexgen's alleged foreign bankruptcy proceeding, this adversary proceeding cannot proceed against Moving Defendants because the claims asserted against them arise from Trustee's fraudulent transfer claim against Nexgen pursuant to 11 U.S.C. § 548.

The court disagrees with this contention for the following reasons.  First, there is insufficient evidence in the record showing that Nexgen has commenced a bankruptcy proceeding which stays or otherwise restricts this adversary action from proceeding.  Second, assuming the existence of a foreign bankruptcy proceeding by Nexgen, Section 1515(a) of the Bankruptcy Code, 11 U.S.C., requires that Nexgen's foreign representative apply to this court for recognition of its foreign proceeding by filing a petition for recognition.  *See* 11 U.S.C. § 1515(a) ("A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.").  "The recognition procedure of [S]ection 1515 is the sole entry point for access by a foreign representative to the state and federal

1   court systems in the United States (except for the limited purpose of collecting the

2   debtor's accounts receivable)."  8 Resnick and Sommer, *Collier on Bankruptcy* ¶ 1515.01

3   at 1515-3 (16th ed. 2015).  Section 1517(a) of the Bankruptcy Code, 11 U.S.C., further

4   requires the court to enter an order recognizing a foreign proceeding, after notice and a

5   hearing, if certain requirements are met, including whether the petition meets the

6   requirements of Section 1515.  *See* 11 U.S.C. 1517(a).  There is no indication that any

7   such petition has been filed under Sections 1515 and 1517 by either Nexgen or Nexgen's

8   foreign representative seeking recognition of Nexgen's alleged bankruptcy filing in the

9   Isle of Man or other foreign jurisdiction.  Further, this adversary proceeding does not

10   involve the exception of collecting the debtor's account receivables.  Accordingly, on this

11   record, the court determines that Nexgen's alleged bankruptcy filing does not prohibit this

12   court from proceeding with the adversary proceeding and, in particular, ruling on the

13   other arguments raised in Moving Defendants' motions to dismiss.

14   **II.     CIVIL RULE 12(b)(6)**

15          In order to avoid dismissal pursuant to Civil Rule 12(b)(6), a complaint must allege

16   sufficient factual matter, which if accepted as true, would "state a claim to relief that is

17   plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting, Bell Atlantic

18   Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court

19   can draw a reasonable inference that the defendant is liable for misconduct.  *Id.*  The

20   complaint must state a claim for relief that is plausible in order to survive a motion to

21   dismiss.  *Id.*  Additionally, pursuant to Bankruptcy Rule 7009, which makes Civil Rule 9(b)

22   applicable to this adversary proceeding, "[i]n alleging fraud or mistake, a party must state

23   with particularity the circumstances constituting fraud and mistake.  Malice, intent,

24   knowledge, and other conditions of a person's mind may be alleged generally."

25   Bankruptcy Rule 7009; Civil Rule 9(b).  Further, a dismissal without leave to amend

26   should not be granted unless "it is clear . . . the complaint could not be saved by any

27

28

amendment." *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) (citation omitted).

As a general rule, the court may not consider any material beyond the pleadings in considering a motion to dismiss under Civil Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)(citation omitted). A court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment . . . but [only when taking] judicial notice of a fact that is [not] subject to reasonable dispute. *Id.* at 689-690; *see also,* Federal Rule of Evidence 201. Additionally, if the plaintiff files an amended complaint, as is the case here, the amended complaint supersedes the original complaint and renders it of no legal effect. *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011)(citations omitted), *cited in,* 2 Wagstaffe, *Rutter Group Federal Procedure Before Trial,* ¶ 8:1550 at 8-214 (2016). Thus, as to arguments made by Mr. Kahen-Kashani and the Burris Parties against claims from prior complaints, because certain of those claims have been superseded by the Third Amended Complaint, and therefore, are deemed to not exist, the court does not consider Mr. Kahen-Kashani's and the Burris Parties' arguments against those now superseded claims.

### A.    Trustee Has Standing to Bring His Third and Twelfth Claims for Relief, But Not His Second, Fourth, Fifth, and Seventh Through Eleventh Claims for Relief Against Moving Defendants.

In their motions to dismiss, Mr. Herrera, Mr. Kahen-Kashani and the Burris Parties challenge Trustee's standing to bring some or all of the state law claims asserted against them in the Third Amended Complaint. The Beroukhims do not challenge Trustee's standing to sue them. Nevertheless, federal courts are required sua sponte to examine jurisdiction independently, including issues of standing of a party to sue. *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008)(citations omitted).

1    Thus, the court must examine Trustee's standing to assert his federal and state law

2    claims against Moving Defendants.

3        A bankruptcy trustee is the representative of the bankruptcy estate and has the

4    capacity to sue and be sued.  11 U.S.C. §§ 323(a) and (b).  Among the bankruptcy

5    trustee's duties is the right to "collect and reduce to money the property of the estate for

6    which such trustee serves."  *See* 11 U.S.C. § 704(a)(1).  The "property of the estate"

7    includes "all legal and equitable interests of the debtor in property as of the

8    commencement of the case," 11 U.S.C. § 541(a)(1), including the debtor's causes of

9    action.  *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005), *citing United*

10   *States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 9 (1983).  Thus, under the Bankruptcy

11   Code, the trustee stands in the shoes of the debtor and has standing to bring any suit

12   that the debtor could have instituted had she not filed for bankruptcy.  *See id.*

13       The Supreme Court and the Ninth Circuit have both held, however, that

14   bankruptcy trustees do not have standing to prosecute actions against third parties on

15   behalf of creditors as opposed to on behalf of a debtor.  *See, e.g.*, *Caplin v. Marine*

16   *Midland Grace Trust Company of New York*, 406 U.S. 416, 428-433 (1972) ("[P]etitioner

17   [the bankruptcy trustee] does not have standing to sue an indenture trustee [non-debtor

18   third party] on behalf of debenture holders [creditors of the estate]."); *Smith v. Arthur*

19   *Andersen LLP*, 421 F.3d at 1002 ("'[i]t is well settled that a bankruptcy trustee has no

20   standing generally to sue third parties on behalf of the estate's creditors, but may only

21   assert claims held by the [debtor himself].'"); *Williams v. California 1st Bank*, 859 F.2d

22   664, 667 (9th Cir. 1988) ("'Congress' message is clear—no trustee, whether a

23   reorganization trustee as in *Caplin* or a liquidation trustee[,] has power under . . . the

24   Code to assert general causes of action, such as [an] alter ego claim, on behalf of the

25   bankrupt estate's creditors.'"); *see also*, *e.g.*, *In re Viola*, 469 B.R. 1, 6 (9th Cir. BAP

26   2012) (holding bankruptcy trustee does not have standing to bring a claim for relief for

27   aiding and abetting fraudulent transfers against third party defendants under 11 U.S.C. §

28

544(a) because the trustee is not a real party in interest); *In re Lucas Dallas, Inc.*, 185

B.R. 801, 804-805 (9th Cir. BAP 1995) (holding bankruptcy trustees do not have standing

to prosecute actions against third parties on behalf of creditors), *citing inter alia, Caplin v.*

*Marine Midland Grace Trust Company of New York, supra,* and *Williams v. California 1st*

*Bank, supra.*

Instead, "[a] trustee's only authority to assert creditor's state-law causes of action

[against third parties] related to fraudulent conveyances is found in section 544(b) of the

Bankruptcy Code."  *Id., citing inter alia, Wyle v. Howard, Weil, Labouisse, Friedrichs Inc.*

(*In re Hamilton Taft & Co.*), 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995).  In *In re Hamilton*

*Taft & Co.*, the bankruptcy trustee sought to recover damages from the third party

defendant under state law on the theory that the defendant aided and abetted the

fraudulent transfer.  176 B.R. at 902.  Noting that California courts permit a creditor to

recover civil damages from those who conspire to transfer property of a debtor to hinder,

delay, or defraud creditors, the bankruptcy court held that the trustee was only authorized

to assert creditor's state law claims against third parties related to fraudulent transfer

conveyances by Section 544(b) of the Bankruptcy Code.  *Id.*

In *Smith v. Arthur Andersen LLP*, the Ninth Circuit considered whether a

bankruptcy trustee had standing to bring a variety of federal and state law claims against

the debtor's former officers, attorneys and other professionals who worked with the

debtor.  421 F.3d at 1002.  In distinguishing between "claims of the debtor," which a

trustee has standing to assert, and "claims of creditors," which a trustee does not have

standing to assert, the Ninth Circuit focused on whether the bankruptcy trustee was

seeking to redress injuries to the debtor or the debtor's creditors.  *Id.*  The Ninth Circuit

held that the bankruptcy trustee had standing because the claims were based on the

concealment of debtor's financial condition that caused injury to the debtor.  That is, the

Ninth Circuit reasoned that if such concealment had not occurred, the debtor would have

1   filed for bankruptcy sooner and would not have spent assets on a failing business. *Id.* at

2   1003.

3        The Ninth Circuit in *Smith* observed that the distinction between "claims of the

4   debtor," which a bankruptcy trustee has statutory authority to assert, and "claims of

5   creditors," which the bankruptcy trustee is barred from pursuing outside of 11 U.S.C. §

6   544, is not always clear. *Id.* at 1002-1003 (citation omitted). As previously stated in

7   *Smith*, the focus of the inquiry is on whether the bankruptcy trustee is seeking to redress

8   injuries to the debtor himself caused by the third party defendants' alleged misconduct.

9   *See Id.* (citations omitted). "If the debtor suffered an injury, the trustee has standing to

10   rectify such injury. But, '[w]hen a third party has injured not the [debtor himself] but a

11   creditor of that [debtor], the trustee in bankruptcy cannot bring suit against the third

12   party.'" *Id.* (citation omitted). "[S]tate law determines whether a claim belongs to the

13   trustee or to the creditor." *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010),

14   *citing inter alia, Butner v. United States,* 440 U.S. 48, 54-55 (1979).

15        The Ninth Circuit's decision in *Williams v. California 1st Bank* is also instructive

16   when determining whether the trustee has standing to bring a claim against a third party.

17   In *Williams*, the Ninth Circuit considered a bank's motion to dismiss the bankruptcy

18   trustee's claim against the bank for violation of federal securities laws on behalf of

19   investors who had been defrauded by a Ponzi scheme and who were also the estate's

20   creditors. 859 F.2d at 665. The Ninth Circuit, adopting the reasoning of the Supreme

21   Court in *Caplin*, held that the bankruptcy trustee did not have standing to pursue the

22   claim against the bank and that the case should be dismissed for the following three

23   reasons: First, since the bankruptcy trustee will recoup only administrative costs from a

24   favorable judgment and the creditors will receive the bulk of the recovery, the bankruptcy

25   trustee was attempting to collect money not owed to the estate, which the bankruptcy

26   trustee is not authorized to do under the Bankruptcy Code. *Id.* at 666-667. Second, the

27   debtor had no independent claim against the bank. *Id.* at 667. Third, allowing the

28

1    bankruptcy trustee to bring suit raised the potential for inconsistent actions between the

2    bankruptcy trustee and creditor investors who might bring their own suits against the

3    bank.  *Id.*

4

5    **1. Trustee does not have standing to bring his second claim for relief**
        **against Mr. Herrera and Mr. Kahen-Kashani, who are third party**
6       **defendants, under a conspiracy theory of liability pursuant to 11**
        **U.S.C. §§ 544(a) and 550.**
7

8        Trustee's second claim for relief asserts a claim on behalf of a "hypothetical

9    creditor" of the estate against Mr. Herrera and Mr. Kahen-Kashani as conspirators of the

10   Pre-Petition Fraudulent Transfer Scheme pursuant to 11 U.S.C. §§ 544(a) and 550 based

11   on a conspiracy theory of liability under California law.  Third Amended Complaint, ¶¶ 51-

12   54.  As discussed herein, this claim is directly contrary to the holding of the Bankruptcy

13   Appellate Panel of the Ninth Circuit in *In re Viola, supra*.

14       In relevant part, Section 544(a)(2) of the Bankruptcy Code provides,

15       The trustee shall have, as of the commencement of the case, and without
16       regard to any knowledge of the trustee or of any creditor, the rights and
         powers of, or may avoid any transfer of property of the debtor or any
17       obligation incurred by the debtor that is voidable by -- . . .

18       (2) a creditor that extends credit to the debtor at the time of the
19       commencement of the case, and obtains, at such time and with respect to
         such credit, an execution against the debtor that is returned unsatisfied at
20       such time, whether or not such a creditor exists.

21   11 U.S.C. § 544(a)(2).  To the extent that the transfer is avoided under Section 544 of the

22   Bankruptcy Code, "the trustee may recover, for the benefit of the estate, the property

23   transferred, or, if the court so orders, the value of such property, from— (1) the initial

24   transferee of such transfer or the entity for whose benefit such transfer was made."  11

25   U.S.C. § 550(a)(1).

26       The Bankruptcy Appellate Panel for the Ninth Circuit in *In re Viola* held that the

27   bankruptcy trustee did not have standing to assert an 11 U.S.C. § 544(a)(2) action

28

against the third party defendants based on an aiding and abetting theory of liability under California law on behalf of the estate's creditors.  469 B.R. at 6-7.  Accordingly, the holding in *In re Viola* directly prohibits Trustee from asserting his second claim for relief against Mr. Herrera and Mr. Kahen-Kashani.  Trustee appears to have recognized and accepted this holding as he wrote in his opposition papers that "Plaintiff now recognizes that the holding of In re Viola[ ] effectively bars Plaintiff from pursuing that particular legal theory."  *Plaintiff's Response In Opposition to Defendant Eric Herrera's Motion to Dismiss*, ECF 134, at 7; *Plaintiff's Response In Opposition to Defendant Ebrahim Kahen-Kashani's Motion to Dismiss*, ECF 135, at 8.  Therefore, Trustee's second claim for relief should be dismissed with prejudice for lack of standing.

In his oppositions to Mr. Herrera and Mr. Kahen-Kashani's Motions to Dismiss, Trustee seeks to expand his second claim for relief to include a claim under 11 U.S.C. § 548 for fraudulent transfer against these defendants, which the court determines to be an improper amended pleading.  *Plaintiff's Response In Opposition to Defendant Eric Herrera's Motion to Dismiss*, ECF 134, at 8-9; *Plaintiff's Response In Opposition to Defendant Ebrahim Kahen-Kashani's Motion to Dismiss*, ECF 135, at 8-11.  Trustee's second claim for relief only asserts a claim pursuant to 11 U.S.C. §§ 544(a) and 550 against Mr. Herrera and Mr. Kahen-Kashani, and not a claim under 11 U.S.C. § 548. Trustee may not unilaterally expand the scope of his pleading against these or other defendants by incorporating a new cause of action through his opposition to the motions to dismiss without complying with the applicable rules of procedural due process.

> **2.**  **Trustee has standing to bring the third cause of action for fraudulent transfer pursuant to 11 U.S.C. §§ 544(b) and 550(a) and California Civil Code § 3439.04(a)(1) against Mr. Herrera and Mr. Kahen-Kashani.**

Trustee's third claim for relief asserts claims against Mr. Herrera and Mr. Kahen-Kashani under 11 U.S.C. §§ 544(b)(1) and 550(a), and California Civil Code §

3439.04(a)(1) as the "beneficiaries" of the Pre-Petition Transfer. *Third Amended Complaint*, ¶¶ 71-76, 78, 82, 86-87.

Section 544(b)(1) of the Bankruptcy Code provides that:

> . . . the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1). As noted above, to the extent that the transfer is avoided under Section 544 of the Bankruptcy Code, the trustee may recover the value of such property from the "entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Trustee seeks to hold Mr. Herrera and Mr. Kahen-Kashani jointly and severally liable for the value of the Property or, in the alternative, in an amount equal to the benefit they each received from the Pre-Petition Transfer. *Third Amended Complaint*, ¶¶ 71-76, 78, 82, 86-87. California Civil Code § 3439.04(a) permits a creditor to avoid a transfer made or obligation incurred by a debtor if made with actual intent to hinder, delay, or defraud any creditor of the debtor. California Civil Code § 3439.04(a).

Trustee alleges that "creditors Ocean Mission Park, LLC and Craig Campbell" have the ability to assert a claim under California Civil Code § 3439.04(a). *See Third Amended Complaint*, ¶ 72. Since Mr. Herrera and Mr. Kahen-Kashani do not contest the ability of creditors Ocean Mission Park, LLC and Craig Campbell to bring such a claim against them, the court determines that Trustee has standing and is authorized to bring his third claim for relief on behalf of the bankruptcy estate against Mr. Herrera and Mr. Kahen-Kashani pursuant to 11 U.S.C. § 544(b)(1).

3.      **Trustee lacks standing to bring the fourth through fifth and seventh through eleventh claims for relief against third parties, including Moving Defendants.**

As a "creditor" of Nexgen, Trustee contends that he has standing to bring the fourth through ninth causes of action. *Plaintiff's Supplemental Memorandum In Opposition to Motions to Dismiss Third Amended Complaint*, ECF 148, at 1. Specifically, Trustee asserts that he is a "creditor" of Nexgen pursuant to California Civil Code §§ 3439.01(b), (c) and (e) by virtue of the first cause of action, which is asserted against Nexgen alone. *See id.* at 6-7.

California Civil Code § 3439.01(c) provides that a "creditor" is a "person that has a claim," California Civil Code § 3439.01(c), and California Civil Code § 3439.01(e) provides that a "debtor" is a "person that is liable on a claim," California Civil Code § 3439.01(e). Under California Civil Code § 3439.01(b), a "claim" is a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured, or unsecured." California Civil Code § 3439.01(b). Trustee's first claim for relief is asserted against Nexgen for the alleged fraudulent transfer of the Property from Debtor to Nexgen pursuant to 11 U.S.C. § 548. *Third Amended Complaint*, ¶¶ 33-44. Trustee argues that by virtue of his first claim for relief against Nexgen, Trustee is a "creditor" of Nexgen under California Civil Code § 3439.01(c), and Nexgen is a "debtor" of Trustee under California Civil Code § 3439.01(e). *Plaintiff's Supplemental Memorandum In Opposition to Motions to Dismiss Third Amended Complaint*, ECF 148, at 6-7.

Specifically, Trustee contends that, post-petition, when Nexgen transferred the Property to the Beroukhims and the sales proceeds thereof, Nexgen did so with an intent to hinder, delay or defraud its creditors, including Trustee. *Id.*; *see also*, *Third Amended Complaint*, ¶¶ 93-102, 135-150. As a result, Trustee asserts that a new right of action accrued in favor of Trustee, as a "creditor" of Nexgen, and against Nexgen, as a "debtor" of Trustee, under California State law pursuant to California Civil Code § 3439.04(a)(1).

1    *Id.*  California Civil Code § 3439.04(a)(1) permits a "creditor" to avoid a transfer made or

2    obligation incurred by a "debtor" if made with actual intent to hinder, delay, or defraud any

3    "creditor" of the "debtor."  California Civil Code § 3439.04(a).

4         Thus, Trustee argues that as a "creditor" of Nexgen, he has standing to bring the

5    fourth through ninth claims for relief against the Moving Defendants under either a

6    conspiracy theory of liability pursuant to California state law arising from their

7    participation in the Post-Petition Fraudulent Transfer Scheme or as initial transferees of

8    the fraudulent transfer of the resale proceeds pursuant to California Civil Code §

9    3436.08(b).  *Plaintiff's Supplemental Memorandum In Opposition to Motions to Dismiss*

10   *Third Amended Complaint*, ECF 148, at 6-8.  Trustee's tenth and eleventh claims for

11   relief also appear to emanate from his Post-Petition Transfer claims since they seek relief

12   pursuant to "California State Law" and involve the re-sale proceeds related to the Post-

13   Petition Transfer.  *See Third Amended Complaint*, ¶¶ 159-169.

14        In support of his arguments, Trustee cites the following cases for the proposition

15   that a bankruptcy trustee has standing to sue third parties on state law claims that arise

16   post-petition.  *Plaintiff's Supplemental Memorandum in Opposition to Motions to Dismiss*

17   *Third Amended Complaint*, ECF 148, at 3-4.  Trustee cites *In re Arnold Print Works, Inc.*,

18   815 F.2d 165, 166-167 (1st Cir. 1987), in which the First Circuit held that a Chapter 11

19   debtor-in-possession's state law action against a third party for breach of a post-petition

20   contract entered by the debtor-in-possession and third party, brought as a part of efforts

21   to liquidate the estate, is a core proceeding.

22        Trustee also cites *In re Geauga Trenching Corp.*, 110 B.R. 638, 645-647 (Bankr.

23   E.D.N.Y. 1990), in which a bankruptcy court held that a Chapter 7 trustee's state law

24   claim against a third party arising from a post-petition contract and dispute between the

25   then-Chapter 11 debtor-in-possession and the third party is a core proceeding.  The court

26   in this case noted, however, that its holding was limited to "parties who have established

27   a direct relationship with [the d]ebtor during the pendency of the bankruptcy proceedings"

28

1  *Id.* at 647.  Trustee also cites *In re Seatrain Lines, Inc.*, 198 B.R. 45, 48-53 (S.D.N.Y.

2  1996),  which held that, although the insurance policies were executed pre-petition, the

3  Chapter 7 trustee's claim for declaratory relief of debtor's rights under its insurance

4  policies against insurer accrued post-petition when insurers refused the estate's demand

5  for defense and indemnification and was a core proceeding.  Trustee further cites *In re*

6  *Baltimore Motor Coach Co.*, 103 B.R. 103, 105 (D. Md. 1989), in which the court ruled

7  that a Chapter 7 trustee's tort or contract claim against insurers for failing to provide the

8  then-Chapter 11 debtor-in-possession with insurance, even after ordered to do so by an

9  insurance commission post-petition, is a core proceeding.

10      Nonetheless, because these cases cited by Trustee do not address or analyze a

11  bankruptcy trustee's standing to bring state law claims that arise post-petition for

12  fraudulent transfer and conspiracy against third parties, these cases are distinguishable

13  from this case.  Additionally, Trustee's cited cases involved a third party that had

14  established a direct contractual relationship with the debtor that arose either pre- or post-

15  petition that benefited the debtor's estate and whose breach of contract occurred post-

16  petition, which is not the situation here.

17      In the case at bar, there was no direct contractual relationship between Debtor and

18  Moving Defendants that arose either pre- or post-petition and benefited the bankruptcy

19  estate, and the fraudulent transfer from Debtor to Nexgen, from which all of the claims

20  arose, occurred pre-petition and did not cause harm to Debtor, but rather, caused harm

21  to his creditors.

22      Trustee argues that the *Caplin*, *Smith* and *Williams* cases discussed above do not

23  apply in this case for the following reasons. *See Plaintiff's Omnibus Reply to Movant's*

24  *Supplemental Briefs*, ECF 158, at 4-9.  Trustee does recognize that *Caplin, Smith* and

25  *Williams* held that a bankruptcy trustee does not have standing to prosecute actions

26  against third parties on behalf of creditors.  *See Id.*; *see also*, *Caplin*, 406 U.S. at 428-433

27  ("[P]etitioner [the bankruptcy trustee] does not have standing to sue an indenture trustee

28

[non-debtor third party] on behalf of debenture holders [creditors of the estate]."); *Smith v. Arthur Andersen LLP*, 421 F.3d at 1002 ("'[i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the [debtor herself].'"); *Williams*, 859 F.2d at 667 ("'Congress' message is clear-no trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee[,] has power under . . . the Code to assert general causes of action, such as [an] alter ego claim, on behalf of the bankrupt estate's creditors.'").  Nonetheless, Trustee contends that because the subject claims in *Caplin*, *Smith* and *Williams* arose pre-petition, the holdings of *Caplin*, *Smith* and *Williams* are necessarily limited to a bankruptcy trustee's state law claims against third parties that arose pre-petition.  *See Plaintiff's Omnibus Reply to Movant's Supplemental Briefs*, ECF 158, at 9-14.

The court agrees with Trustee to the extent that the claims of the bankruptcy trustees in *Caplin*, *Smith* and *Williams* cases arose pre-petition.  *See Caplin*, 406 U.S. at 417-421; *Smith*, 421 F.3d at 995; *Williams*, 859 F.2d at 665.  The court disagrees with Trustee, however, that the holdings in *Caplin*, *Smith* and *Williams* are limited to pre-petition claims.  *Caplin*, *Smith* and *Williams* held that a bankruptcy trustee does not have standing to prosecute actions against third parties on behalf of creditors, *Caplin*, 406 U.S. at 428-433; *Smith*, 421 F.3d at 1002; *Williams*, 859 F.2d at 667, and did not draw a distinction between pre-petition and post-petition claims, *see generally*, *Caplin*, 406 U.S. 416; *Smith*, 421 F.3d 989; *Williams*, 859 F.2d 664.  Moreover, Trustee has not provided any controlling legal authority to persuade this court that a bankruptcy trustee is permitted to bring fraudulent transfer and conspiracy claims that arose post-petition against third parties as a creditor, and the court does not see why the holdings of *Caplin*, *Smith* and *Williams* are limited to pre-petition claims.  Accordingly, the court determines that the reasoning of *Caplin*, *Smith* and *Williams* applies to pre-petition as well as post-petition claims brought by a bankruptcy trustee on behalf of creditors against third parties.

1    Adopting the reasoning in *Caplin*, *Smith* and *Williams*, the court holds that Trustee

2  does not have standing to assert his fourth through fifth and seventh through eleventh

3  claims for relief against Moving Defendants.  As explained above, to determine if a

4  bankruptcy trustee has standing to assert a claim against a third party, the Ninth Circuit in

5  *Smith* focused the inquiry on whether a bankruptcy trustee is seeking to redress injuries

6  to the debtor or the debtor's creditors caused by the third party's alleged misconduct.

7  *See, Smith*, 421 F.3d at 1002-1003.  Moving Defendants' alleged misconduct did not

8  cause injury to Debtor, who appears to have been the mastermind of the Pre- and Post-

9  Petition Fraudulent Transfer Schemes based on the allegations of the Third Amended

10  Complaint.  *See Third Amended Complaint*, ¶ 48.  Instead, the alleged fraudulent transfer

11  of the Property from Debtor to Nexgen caused harm to the estate's creditors by

12  transferring away a valuable asset of the estate.  *See Id.*, ¶ 38.  Moreover, the alleged

13  fraudulent resale of the Property from Nexgen to the Beroukhims and sale proceeds

14  thereof caused harm to Nexgen's creditors by rendering Nexgen judgment proof, *see id.*,

15  ¶ 4, as well as the estate's creditors since the resale of the Property was a part of a

16  larger scheme of hindering, delaying or defrauding the estate's creditors from recovering

17  the Property or the value thereof.  Accordingly, pursuant to the reasoning in *Smith*, the

18  court determines that Trustee brought his state law claims for fraudulent transfer and

19  conspiracy against Moving Defendants on behalf of the estate's creditors.

20    Based on Trustee's own logic as to what makes him a "creditor" of Nexgen, the

21  court determines that at least two creditors of the estate, Ocean Mission Park, LLC and

22  Craig Campbell, can be considered "creditors" of Nexgen.  Trustee's third cause of action

23  is brought against Nexgen, among others, pursuant to California Civil Code §

24  3439.04(a)(1) on behalf of Ocean Mission Park, LLC and Craig Campbell through 11

25  U.S.C. §§ 544(b) and 550(a) to avoid the Pre-Petition Transfer and recover the value

26  thereof, or the value of the benefit they each received from the Pre-Petition Transfer.

27  *Third Amended Complaint*, ¶¶ 71-76, 84.  Accordingly, Ocean Mission Park, LLC and

28

Craig Campbell have a "claim" against Nexgen under California Civil Code § 3439.01(b)

(A "claim" is a "right to payment, whether or not the right is reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal,

equitable, secured, or unsecured."), and are "creditors" of Nexgen under California Civil

Code § 3439.01(c) (a "creditor" is a "person that has a claim.").  As "creditors" of Nexgen,

Ocean Mission Park, LLC and Craig Campbell have the right to assert the fourth through

fifth and seventh through eleventh state law claims for fraudulent transfer and conspiracy

arising from the Pre- and Post-Petition Fraudulent Transfer Schemes against Moving

Defendants.  Accordingly, the court determines that Trustee is attempting to bring state

law claims of the estate's creditors, which is prohibited by *Caplin*, *Smith* and *Williams*.

Additionally, applying the reasoning of *Caplin* and *Williams*, the court also

determines that Trustee does not have standing to assert the state law claims for

fraudulent transfer and conspiracy against Moving Defendants.  First, since Trustee will

recoup only administrative costs from a favorable judgment and the estate's creditors will

receive the bulk of the recovery, Trustee is attempting to collect money not owed to the

estate, which the bankruptcy trustee is not authorized to do under the Bankruptcy Code.

Second, Debtor, the apparent mastermind of the Pre- and Post-Petition Fraudulent

Transfer Schemes, has no independent claim against Moving Defendants.  Third,

allowing Trustee to bring the state law claims for fraudulent transfer and conspiracy

against Moving Defendants raises the potential for inconsistent actions between Trustee

and creditors Ocean Mission Park, LLC and Craig Campbell, as well as other qualifying

creditors, which might bring their own suits against Moving Defendants.

Further, the court is not persuaded that Trustee's conspiracy claims under the fifth,

seventh and ninth claims for relief against Mr. Herrera and Mr. Kahen-Kashani arose

post-petition.  Trustee attempts to bifurcate the fraudulent transfer scheme into Pre- and

Post-Petition Fraudulent Transfer Schemes, but they should really be collapsed together

as a part of one fraudulent transfer scheme that arose pre-petition.  As Trustee alleges in

the Third Amended Complaint, the Pre- and Post-Petition Fraudulent Transfer Schemes were initially "formulated and agreed" to by the same parties, including Debtor, Mrs. Shetabi, Nexgen, Mr. Bushehri, Mr. Herrera, as the real estate broker, and Mr. Kahen-Kashani, as the president of Nexgen, among others, to fraudulently transfer the Property away from the reach of Debtor's creditors and later Nexgen's creditors.  *See Third Amended Complaint*, ¶¶ 8, 11, 29, 38, 48, 59, 68,104 and 105.  The Burris Parties allegedly joined the fraudulent transfer scheme at a later time, post-petition.  *Id.*, ¶ 109. This leads the court to believe that Trustee's fifth, seventh, and ninth claims for relief for conspiracy against Mr. Herrera and Mr. Kahen-Kashani actually arose pre-petition, and Trustee lacks standing to assert such claims on behalf of the estate's creditors pursuant to *Caplin*, *Smith* and *Williams*.

Based on the above analysis, the court determines that Trustee is attempting to bring state law claims for fraudulent transfer and conspiracy against third parties, including Moving Defendants, on behalf of the estate's creditors.  Accordingly, the court holds that Trustee lacks standing to bring the fourth through fifth and seventh through eleventh claims for relief against Moving Defendants pursuant to *Caplin*, *Smith* and *Williams*.  Therefore, the court dismisses the fourth through fifth and seventh through eleventh claims for relief against Moving Defendants with prejudice for lack of standing.

> **4.    Trustee has standing to pursue his twelfth claim for relief for preliminary and permanent injunctions pursuant to 11 U.S.C. § 105 against Moving Defendants.**

Trustee's twelfth claim for relief seeks preliminary and permanent injunctions barring all of the defendants from further transferring the Property and the sale proceeds thereof pursuant to 11 U.S.C. § 105.  *Third Amended Complaint*, ¶¶ 170-173.  Section 105(a) of the Bankruptcy Code authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  "Section 105 [of the Bankruptcy Code] has been relied on as authority for

the issuance of injunctions." 1 *March*, *Ahart & Shapiro*, *California Practice Guide:*

*Bankruptcy*, ¶ 1:1012 at 1-117 (2015).  Further, a Chapter 7 trustee has standing to

assert claims for preliminary and permanent injunctions pursuant to 11 U.S.C. § 105.

*See, e.g., In re Focus Media Inc.*, 387 F.3d 1077, 1087 (9th Cir. 2004) (holding that the

bankruptcy court did not abuse its discretion in issuing the preliminary injunction in favor

of the bankruptcy trustee).  Accordingly, the court determines that Trustee has standing

to assert his twelfth claim for relief against Moving Defendants to the extent he alleges

that they possess or control the Property or the sale proceeds thereof.

Based on the above analysis, the court determines that Trustee has standing to

assert his third and twelfth claims for relief, but not his second, fourth, fifth, and seventh

through eleventh claims for relief against Moving Defendants.  Accordingly, the court

dismisses Trustee's second, fourth, fifth, and seventh through eleventh claims for relief

against Moving Defendants with prejudice pursuant to Civil Rule 12(b)(6) for lack of

standing.

> **B.    Trustee's Third Claim for Relief Against Mr. Herrera and Mr. Kahen-Kashani States Sufficient Facts Upon Which Relief May Be Granted; However, Any Available Recovery Under Trustee's Third Claim for Relief Against Mr. Herrera and Mr. Kahen-Kashani Is Limited to the Actual Value Mr. Herrera and Mr. Kahen-Kashani Received from the Alleged Fraudulent Transfer.**

Based on the allegations made in the Third Amended Complaint, the court holds

that Trustee has alleged sufficient facts under his third claim for relief to put Mr. Herrera

and Mr. Kahen-Kashani on notice of the fraudulent nature of the Pre-Petition Transfer.

The court determines, however, under the reasoning of *Elliott v. Glushon*, 390 F.2d 514

(9th Cir. 1967)(Bankruptcy Act case), that Trustee's recovery, if any, against Mr. Herrera

and Mr. Kahen-Kashani is limited to the actual value they each received from the alleged

fraudulent transfer under Trustee's third claim for relief.

Trustee's third claim for relief asserts a claim against Mr. Herrera and Mr. Kahen-Kashani pursuant to Sections 544(b)(1) and 550 of the Bankruptcy Code. Trustee seeks to hold Mr. Herrera and Mr. Kahen-Kashani jointly and severally liable for the value of the Property or, in the alternative, to hold Mr. Herrera and Mr. Kahen-Kashani liable in an amount equal to the benefit they each received or were to receive from the transfer of the Property. *Third Amended Complaint*, ¶¶ 71-76, 78, 82 and 86-87.

In *Elliott v. Glushon*, the Ninth Circuit specifically held that the bankruptcy trustee's actions under Sections 67, 70(e), and 60(b) of the Bankruptcy Act of 1898 are limited to recovery against persons who have "received" the property in question, and the trustee "may recover from them the value of that property if, for example, they have converted it so that recovery in specie is no longer possible." 390 F.2d at 517. The Ninth Circuit reasoned that:

> We must remember, however, that we are interpreting a statute designed to deal with bankruptcy matters in a somewhat circumscribed fashion, and not to preempt all state laws governing, for example, questions of fraud and deceit. The purpose of those sections of the Bankruptcy Act which are here relevant is clearly to preserve the assets of the bankrupt; they are not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets. The Act carefully speaks of conveyances of property as being "null and void," and authorizes suit by the trustee to "reclaim and recover such property or collect its value." The actions legislated against are not "prohibited"; those persons whose actions are rendered 'null and void' are not made "liable"; and terms such as "damages" are not used. The legislative theory is cancellation, not the creation of liability for the consequences of a wrongful act.

> It is also significant that the term "fraudulent transfer" as used in the Act includes a great many transactions which do not constitute "actual" fraud; no intent to defraud need be found so long as the prescribed statutory criteria are met. Thus there is affirmative justification for rejecting a rule under which all persons having a hand in transactions later held void under the Act would be civilly liable. Limiting recovery in the manner suggested by the appellee Glushon protects innocent persons from civil liability, while at the same time preserving the assets of the bankrupt's estate. The trustee may bring suit against those persons who received the transferred property. He may recover from them the value of that property if, for example, they have converted it so that recovery in specie is no longer

1
2

> possible. In the overwhelming number of instances, these rights will suffice
> to allow the trustee fully to protect the interests of creditors.

3

4

*Id.*, at 516-517.  Section 544(b)(1) of the Bankruptcy Code is derived from Section 70(e)

5

of the Bankruptcy Act, and "[i]t gives the trustee the rights of actual unsecured creditors

6

under applicable law to void transfers."  5 Resnick and Sommer, *Collier on Bankruptcy* ¶

7

544.LH at 544-36 (16th ed. 2015) (addressing the legislative history of Section 544(b)(1)

of the Bankruptcy Code).

8

Section 550(a)(1) of the Bankruptcy Code further provides in pertinent part that, to

9

the extent a transfer is avoided under section 544, the trustee may recover, for the

10

benefit of the estate, the property transferred, or, if the court so orders, the value of such

11

property, from the entity for whose benefit such transfer was made.  11 U.S.C. §

12

550(a)(1).  However, the Ninth Circuit makes clear in *Elliott v. Glushon*, which limits

13

recovery to the actual value received, if the court should enter judgment in favor of

14

Trustee and against Mr. Herrera and Mr. Kahen-Kashani under Trustee's third claim for

15

relief, Trustee's recovery under that claim would be limited to the value Mr. Herrera and

16

Mr. Kahen-Kashani actually received from the alleged fraudulent transfer.

17

The Ninth Circuit in *Elliott v. Glushon* also noted that, "even if recovery against the

18

recipients of the property is not possible because, for instance, of their own insolvency),

19

state law may well- where actual fraud was engaged in- allow a damage action in the

20

nature of deceit against any conspirators."  390 F.2d at 517.  In the pending case,

21

however, as discussed above, Trustee does not have standing to bring his fourth through

22

fifth and seventh through eleventh state law claims against Moving Defendants on behalf

23

of the estate's creditors.

24

Accordingly, based on the above analysis, the court holds that Mr. Herrera's and

25

Mr. Kahen-Kashani's requests to dismiss Trustee's third claim for relief in the Third

26

Amended Complaint for failure to state a claim upon which relief can be granted under

27

Civil Rule 12(b)(6) is denied as to Mr. Herrera and Mr. Kahen-Kashani; however,

28

1  recovery under the third claim for relief shall be limited to the actual value received by Mr.

2  Herrera and Mr. Kahen-Kashani from the alleged fraudulent transfer.

3

4  **C.     Because it Fails to Allege any Facts Showing the Burris Parties'
   Liability Under That Claim, Trustee's Third Claim For Relief Fails to
   State a Claim Upon Which Relief Can be Granted Against the Burris
   Parties Pursuant to Civil Rule 12(b)(6).**

5

6

7  Because the caption of the third claim for relief names the Burris Parties as

8  defendants, but the allegations made under the third claim for relief do not address the

9  Burris Parties' liability, if any, the court dismisses Trustee's third claim for relief with

10 prejudice as against the Burris Parties.  *Third Amended Complaint*, ¶¶ 71-92.

11 Additionally, the court notes that in footnote one of the Trustee's opposition to the Burris

12 Parties' Motion to Dismiss, Trustee acknowledges that the caption of the third claim for

13 relief erroneously names the Burris Parties.  *Plaintiff's Response In Opposition to*

14 *Defendants Donald Burris and Burris Schoenberg & Walden LLP's Motion to Dismiss*

15 *Plaintiff's Third Amended Complaint*, ECF 133, at 1-2.  Accordingly, the court dismisses

16 Trustee's third claim for relief for failure to state a claim upon which relief can be granted

17 under Civil Rule 12(b)(6) as to Burris Parties only with prejudice.

18 **D.     Trustee's Twelfth Claim for Relief Against the Beroukhims and the
   Burris Parties Fails to State a Claim Upon Which Relief can be Granted
   Pursuant to Civil Rule 12(b)(6), Because the Claims Arise from the
   Post-Petition Transfer Claims that Trustee Does Not Have Standing to
   Assert.**

19

20

21

22 Trustee's twelfth claim for relief seeks preliminary and permanent injunctions

23 barring all of the defendants from further transferring the Property and the sale proceeds

24 thereof pursuant to 11 U.S.C. § 105.  In relevant part, the fourth claim for relief is

25 asserted against the Beroukhims and the fifth, seventh, eighth, ninth, tenth and eleventh

26 claims for relief are asserted against the Burris Parties.  Because the court holds that

27 Trustee does not have standing to bring these claims against the Beroukhims and the

28

1  Burris Parties, and the twelfth claim for relief requires a finding of liability under at least

2  one of the preceding claims asserted against the Beroukhims and the Burris Parties, the

3  court dismisses the twelfth claim for relief against the Beroukhims and the Burris Parties

4  with prejudice for failure to state a claim upon which relief can be granted under Civil

5  Rule 12(b)(6).  The court does not dismiss the twelfth claim for relief with respect to the

6  other defendants whose claims are pending before the court.

7         **E.**       **Trustee's Complaint Against the Beroukhims Otherwise Fails to State**

8                 **a Claim Upon Which Relief can be Granted Pursuant to Civil Rule**

9                 **12(b)(6),**

10       Trustee in the Third Amended Complaint alleges claims against the Beroukhims in

11  the fourth and twelfth claims for relief, and these claims against them should be

12  dismissed as discussed above for lack of standing and for lack of an underlying claim for

13  injunctive relief.  The court agrees with the arguments of the Beroukhims in their moving

14  and reply papers that Trustee has not made sufficient allegations against them to state

15  claims for fraudulent transfer under California Civil Code § 3439.04(a)(2) or § 3439.05

16  upon which relief can be granted, i.e., Trustee has not alleged that they did not pay

17  "reasonably equivalent value" for the Property, and has not made allegations that they

18  had any involvement in either the Pre-Petition Fraudulent Transfer Scheme or the Post-

19  Petition Fraudulent Transfer Scheme, or both, or any other indicia of being involved in an

20  intentional fraudulent transfer.  ECF 154 at 3-6.  For these additional reasons, the motion

21  of the Beroukhims to dismiss under Civil Rule 12(b)(6) should be granted.

22                             **CONCLUSION**

23       For the foregoing reasons, the court should grant the motions of the Moving

24  Defendants to dismiss the second, fourth, fifth, seventh, eighth, ninth, tenth and eleventh

25  claims for relief against them for lack of standing pursuant to Civil Rule 12(b)(6) with

26  prejudice.

27

28

1    Additionally, the court should grant the motion of the Burris Parties to dismiss the

2  third claim for relief against them only with prejudice for failure to state a claim upon

3  which relief can be granted pursuant to Civil Rule 12(b)(6).  Because the third claim for

4  relief in the Third Amended Complaint alleges sufficient facts to put Mr. Herrera and Mr.

5  Kahen-Kashani on notice of a claim upon which relief can be granted, the court should

6  not grant their motions to dismiss the third claim for relief as to them.  Nonetheless,

7  recovery under the third claim for relief, if granted, shall be limited to the value that Mr.

8  Herrera and Mr. Kahen-Kashani actually received from the alleged fraudulent transfer.

9  Similarly, leave to amend should be granted for Trustee to allege a claim against the

10  Burris Parties limited to the value that they actually received from the alleged fraudulent

11  transfer and for injunctive relief if an underlying claim for fraudulent transfer as to this

12  value can be alleged.

13    The motion of the Beroukhims to dismiss under Civil Rule 12(b)(6) should be

14  granted, but since the Third Amended Complaint was the first complaint against these

15  parties, dismissal should be with leave to amend within 30 days of entry of the order

16  granting the Motions to allege a claim upon which relief can be granted.

17    A separate order consistent with this memorandum decision is being entered

18  concurrently herewith.

19    **IT IS SO ORDERED.**

20                                                 ###

21

22

23  Date: March 30, 2016

24                                        _____
                                         Robert Kwan
25                                        United States Bankruptcy Judge

26

27

28

34